UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| WILLIE F. JEFFERSON, JR., | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-497 JD |
| MARK R. SEVIER, et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

In this case, plaintiff Willie F. Jefferson alleges that defendants Warden Mark R. Sevier, Dr. Andrew Liaw, and Corizon, LLC were deliberately indifferent to medical needs arising from Mr. Jefferson's sickle cell anemia while he was a prisoner at Westville Correctional Center. He alleges for similar reasons that the defendants violated his rights under the Americans with Disabilities Act. The defendants each moved for summary judgment, and Mr. Jefferson has informed the Court that he does not intend to respond, so this matter is now ripe for ruling. For the following reasons, the Court grants the motions for summary judgment.

### I. FACTUAL BACKGROUND

Pursuant to Federal Rule of Civil Procedure 56(e), if a party "fails to properly address another party's assertion of fact" in responding to a motion for summary judgment, the court may "consider the fact undisputed for the purposes of the motion." Here, Mr. Jefferson has not responded to the motions for summary judgment, so the Court accepts the following facts submitted by the defendants as undisputed.

Mr. Jefferson suffers from sickle cell disease, among other conditions. Sickle cell causes chronic pain, and can also cause acute episodes of pain known as pain crises. To facilitate the

rapid administration of pain medication during such crises, Mr. Jefferson had a "Port-a-Cath" chest port implanted before his time in prison.

On August 18, 2015, Mr. Jefferson was sentenced to three years in prison for aggravated battery. That month, he entered the custody of the Indiana Department of Correction, which had contracted with Corizon, Inc. to provide medical care to its prisoners. On September 9, Mr. Jefferson arrived at Westville Correctional Center, where Mr. Sevier served as warden and Dr. Liaw worked as Corizon's chief medical officer. Upon Mr. Jefferson's arrival, Corizon placed him in its Chronic Care Clinic program, which ensured he saw either a physician or nurse practitioner at least every ninety days for his chronic conditions. He was also permitted to submit requests for healthcare as needed. Between these policies, he received a medical evaluation at a minimum of every month, and sometimes much more frequently. In fact, Mr. Jefferson spent about eight of his fifteenth months of incarceration in the prison infirmary, which operates like the general medical ward of a hospital and offered him around the clock nursing care.

Corizon's numerous medical assessments went far beyond taking his temperature. Corizon personnel prescribed him pain medication, hydrea, and folic acid to treat and control the symptoms of sickle cell, monitoring their effectiveness and changing pain management drugs when Mr. Jefferson requested. They sent Mr. Jefferson for urinalysis and bloodwork dozens of times when he complained of pain to monitor his sickle cell disease. In November 2015, April, July, and August 2016, they sent him for chest x-rays and EKGs when he complained of chest and abdominal pain. They sent him to St. Anthony Hospital from July 12 to 19, 2016, where he was diagnosed with and treated for salmonella sepsis originating in his gastrointestinal tract. On March 3, 2016, a doctor even examined him for acne complaints.

Despite often tenuous objective evidence of medical need, the medical defendants treated Mr. Jefferson vigorously in response to his complaints and requests for assistance. Medical staff admitted Mr. Jefferson to the infirmary for close monitoring and evaluation whenever he alleged a pain crisis, even when blood and urine tests performed by outside laboratories showed no sign of one. They treated him even when his behavior did not correspond with his reported discomfort. On August 10, 2016, for example, he rated his pain 10/10 and claimed it was preventing him from walking to the cafeteria, yet he had walked to the cafeteria earlier that day, walked to the infirmary, and was observed walking around and socializing throughout. Nevertheless, Dr. Liaw issued him a wheelchair and admitted him for his fourth lengthy infirmary stay the next day, where he would stay for the remainder of his sentence.

After his release in December 2016, Mr. Jefferson retained counsel and filed this suit against Mr. Sevier, Dr. Liaw, and Corizon, asserting that they violated his rights under the Eighth Amendment and the Americans with Disabilities Act. He later agreed to dismiss his ADA claim against Dr. Liaw and Corizon, but the rest of his claims remain pending. During discovery, the defendants had Mr. Jefferson's medical records reviewed by Dr. Thomas Waits, a hematologist. Dr. Waits opined that the treatment Mr. Jefferson received "was very good, appropriate and within the community standard of care." [DE 53-6]. He opined, for example, that Mr. Jefferson was given appropriate medications, that he was given proper attention during times of possible crises, and that he received appropriate treatment when he experienced complications. In sum, Dr. Waits opined that he "saw no breaches in the standard of care during any portions of Mr. Jefferson's treatment." *Id.* Each of the defendants moved for summary judgment following the close of discovery. By counsel, Mr. Jefferson filed a notice stating that he did not intend to file responses to those motions.

## II. STANDARD OF REVIEW

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations contained in its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III. DISCUSSION

Mr. Jefferson asserts claims against all three defendants under the Eighth Amendment, and against Mr. Sevier under the Americans with Disabilities Act. The Court begins with the claims under the Eighth Amendment, which prohibits cruel and unusual punishment through deliberate indifference to serious medical needs. To survive summary judgment on this claim, there must be evidence from which a reasonable juror could conclude that the defendants "knew about but consciously disregarded a serious medical condition." *Fitzgerald v. Greer*, 324 F.

App'x 510, 514 (7th Cir. 2009). Deliberate indifference is a high standard. Even medical malpractice and incompetence do not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000). "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). Moreover, a "disagreement with medical professionals [does not] state a cognizable Eighth Amendment Claim under the deliberate indifference standard of *Estelle v. Gamble* [429 U.S. 97 (1976)]." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Even viewing the facts in the light most favorable to Mr. Jefferson, no reasonable juror could conclude that Mr. Sevier, Dr. Liaw, or Corizon were deliberately indifferent to Mr. Jefferson's medical condition. The affidavit of hematologist Dr. Thomas Waits contains the uncontested opinion that the "medical care Mr. Jefferson received in the Indiana Department of Corrections was very good, appropriate and within the community standard of care." [DE 53-6 at 2]. His sickle cell treatment included appropriate prescriptions to treat sickle cell and its symptoms, timely emergency responses to the alleged onsets of crises, and admission to the infirmary for closer care when a crisis was suspected. [DE 53-1 at 2]. Mr. Jefferson has not submitted any evidence to the contrary, and thus has not shown that the treatment he received was inadequate, much less that it reflected deliberate indifference.

Mr. Jefferson's complaint details two specific episodes purporting to show the defendants' indifference to his medical needs, but the evidence at summary judgment does not support those allegations. First, he alleges that Dr. Liaw "refused to see" him between June 18 and June 24, 2016, prompting him to submit a request to Mr. Sevier for an interview to request transfer to another facility. [DE 1 at 5]. In fact, Dr. Liaw saw him on June 22. [DE 53 at 17]. Further, during that week, Mr. Jefferson had bloodwork and urinalysis performed, underwent

examination by two different nurses, one of whom consulted with Dr. Liaw by phone so that he could authorize a pain medication injection, and had his regularly scheduled Chronic Care Clinic appointment with a nurse practitioner. [DE 53 at 16–17]. Mr. Jefferson received medical treatment nearly daily during the week he says his complaints were ignored, and the evidence does not suggest any inadequacy in that treatment.

Mr. Jefferson also alleges that medical personnel's failure to regularly clean his Port-a-Cath chest port caused an infection. However, Mr. Jefferson's chest port was regularly checked and flushed by Corizon personnel and it never caused any problems or became infected. [DE 53-1 at 2]. The only infection Mr. Jefferson suffered was sepsis caused not by his chest port but by bacteria salmonella in the gastrointestinal tract, a common infection for sufferers of sickle cell anemia. [DE 53 at 1–2]. The defendants noticed Mr. Jefferson had an elevated temperature July 10, 2016 and within two days transferred him by emergency ambulance to St. Anthony Hospital, where he was treated for salmonella sepsis, sickle cell disease with crisis, and lung nodules. [DE 53 at 18–19]. On August 25, 2016, Mr. Jefferson was sent for an outside physician to examine the chest port for signs of infection. The doctor found none. [DE 53-4 at 1103]. The medical defendants regularly cleaned the chest port and Mr. Jefferson never suffered any harm from improper cleaning.

Beyond these two specific cases, Mr. Jefferson alleges a general pattern of the defendants ignoring his medical needs. He names five written Requests for Health Care which were "never processed" by the defendants. [DE 1 at 6]. They were. On July 7, 2016, medical personnel logged all named requests and scheduled a nursing sick call in response. [DE 53-3 at 712]. He was admitted to the infirmary the same day for possible sickle cell crisis. He alleges Mr. Sevier failed to take corrective action when he complained about his care but has not shown that

corrective action was needed. [DE 1 at 5]. In sum, Mr. Jefferson presented no evidence of any instance where his requests for medical care went unheeded.

Mr. Jefferson also alleges that even when debilitated by a crisis he was required to rise at 5:00AM every morning to retrieve his own medication. [DE 1 at 5]. Yet he was admitted to the infirmary whenever he seemed at risk of entering a crisis. In the infirmary, medical personnel brought his medication to him and attended him twenty-four hours a day. Mr. Jefferson stayed in the infirmary from September 15 to 22, 2015, for a reported pain crisis. He stayed there from November 23 to December 23, 2015, after he stopped taking his medication. He stayed there from July 7 to August 1, 2016, for another reported pain crisis. Finally, he stayed there August 11 until his discharge from prison on December 15, 2016, to minimize the chances of stress triggering a crisis. [DE 53]. In short, no evidence has been presented that Mr. Jefferson ever suffered the conditions he alleges.

From these facts, no reasonable juror could conclude that any of the defendants were deliberately indifferent to Mr. Jefferson's sickle cell disease or any other serious medical need. The undisputed expert opinion is that Mr. Jefferson received good medical care, with appropriate treatment of his sickle cell disease and admission to the infirmary during possible crises. Corizon medical personnel under Dr. Liaw's direction assessed and treated Mr. Jefferson several times a day during his crises. No evidence of departure from the standard of care at all has been given, much less a harmful departure arising from deliberate indifference. Because Mr. Jefferson has not shown that he suffered a violation of his rights under the Eight Amendment, all defendants are entitled to summary judgment on his § 1983 claims.

Nor has Mr. Jefferson shown that Mr. Sevier deprived him of rights guaranteed him by the Americans with Disabilities Act, as alleged in Count II of his complaint. Under the ADA, an

individual cannot be denied access to services or otherwise subjected to discrimination because of his disability. 42 U.S.C. § 12132. Mr. Jefferson's ADA claim mirrored his deliberate indifference claim, as he alleged that the defendants discriminated against him by failing to provide proper care for his condition. As already discussed, though, the evidence does not support those allegations. To the contrary, the evidence shows that Mr. Jefferson received adequate treatment and care during his incarceration. Because Mr. Jefferson has not presented any evidence that he was deprived of any rights guaranteed by the ADA, no reasonable juror could find for him on that claim. The Court therefore grants summary judgment on Mr. Jefferson's ADA claim as well.

## IV.  CONCLUSION

The defendants' motions for summary judgment [DE 51, 56, 58] are GRANTED. The Clerk is DIRECTED to enter judgment in favor of the defendants.

SO ORDERED.

ENTERED:  July 17, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court